Re Martorell.

# IN THE MATTER OF APPLICATION OF RAFAEL MARTORELL FOR WRIT OF HABEAS CORPUS.

San Juan, Law, No. 1399.

RE EXTRADITION TO CUBA.

Extradition—Difference in Crime Charged.

1. While the crime charged in the extradition papers must be substantially the same as that shown before the arresting Federal commissioner, it need not be identical in all respects, because the laws of no two countries agree in all respects. It will not be presumed that the country to which a prisoner is returned,—in this case Cuba,—will do injustice. If so, it is for the state department.

Forgery—Signing Civil Law Deeds.

2. Under the civil law the execution of a deed is really a quasi judicial act before a notary. A person cannot be said to commit a forgery of a deed to which he signs his own name, even though he procures others to sign fictitious names.

Forgery—Procuring by Others.

3. A person may be convicted of forgery who procures others to do the act if he is himself present.

Extradition—Foreign Crime.

4. It is not material whether the offense charged would be a crime under the law of the state of arrest if it is a crime under the law of the state instituting extradition.

Extradition—Procuring Personation.

5. Where a defendant procures another to personate a third party and sign a deed as such, he is guilty of falsification of a public document.

Falsification—Validity of Deed.

6. The validity of the deed alleged to be forged cannot be assumed on proceedings for extradition for forgery.

Note.—On right, in reviewing extradition proceedings, to be heard upon the merits of the charge against accused, see note in 21 L.R.A.(N.S.) 939.

Re Martorell.

Extradition—Limitation.

> 7. The limitation applicable in extradition is that of the country upon which the demand is made. If there are two possible charges, and the time for the lowest charge has not elapsed, there is no limitation applicable.

Extradition—Habeas Corpus.

> 8. Statutes and treaties intrust the commitment of alleged criminals to Federal commissioners; and the Federal court can interfere on habeas corpus only to see that the committing magistrate had jurisdiction. The court is not acting within its general jurisdiction, but is looking at the case from the outside.

Opinion filed August 10, 1920.

Messrs. *Miguel Guerra* and *Coll y Cuchí* for plaintiff.

Messrs. *Muñoz & Brown*, and *Miguel A. Muñoz* for Government of Cuba.

HAMILTON, Judge, delivered the following opinion:

This interesting case has been well presented from all points of view and the court feels in a position to decide the application. The petitioner was at first informally brought before the court without the issue of a formal writ, but the proceeding has taken the course of the usual habeas corpus, the petitioner has been released on bail pending the action of the court, and the order to be made herein will be that conforming to the usual proceeding in habeas corpus.

1. Among the new points presented since the provisional opinion of the court filed in this cause, is that the proceeding begun in Cuba was in pursuance of a "denuncia de falsedad en

Re Martorell.

documentos oficiales," while the application made to the United
States commissioner in San Juan which is now in question
was "the crime of falsification of public documents," in regard
to illegal proceedings as well as the deed alleged to have been
fabricated in Cuba at the instance of petitioner Martorell. The
argument is that this is a departure, inasmuch as "falsedad en
documentos oficiales" is not the same as "falsification of public
documents" and is not one of the crimes mentioned in the ex-
tradition treaty. This however, would seem to be too narrow
a construction of the treaty. The treaty covers "forgery . . .
or falsification of the official acts or documents of the govern-
ment or public authorities including courts of justice." In the
construction of extradition treaties, technicalities in criminal
proceedings are applicable only to a limited extent, since an
exact correspondence between the laws of the two countries
cannot be expected. The only purpose of the extradition is
to put the accused on trial under the laws of his own country.
United States v. Greene, 146 Fed. 766. This can be no hard-
ship upon the petitioner, as it is returning him to the laws,
customs, and authorities to which he is used, and where it is
presumed he will be treated with fairness. A good deal has
been said in argument about the quality of justice administered
in Cuba. The court has not felt called upon to limit the scope
of remarks of counsel, but in deciding the case feels that it
should say there is no presumption that injustice will be done
by the Cuban authorities, particularly in the trial of their
own citizen. There is a marked difference in political institu-
tions and in method of judicial procedure between Cuba and
the United States, including Porto Rico. An American may
be pardoned in the belief that the advantage lies entirely with

American institutions. The United States however have made a treaty of extradition with Cuba, and there is no reason in international law or otherwise in considering the two parties as contracting upon any other than an equal basis.

It is not conceived that "falsedad en documentos oficiales" is not embraced within the spirit if not the letter of the crime in the treaty and by consular application called "falsification of public documents," and therefore there is no departure from the Cuban proceedings. Even if it were otherwise, this court could hardly interfere, provided the evidence justified the crime imputed by the Insular authorities. Frequently an act or series of acts constitutes more than one crime, and it might well be that while a proceeding is begun upon one theory, when the point of extradition is reached it is preferable from absence of witnesses or any other reason to proceed upon another theory. The point is not so much what crime is charged in the original proceeding as what crime has been committed by the petitioner, and whether that crime is extraditable. If upon his being sent to Cuba the authorities there undertake to try him for an entirely different offense, that would be a matter to be looked after by the state department. It cannot be provided for in advance by a court whose duty is merely to inquire into the jurisdiction of the United States commissioner in committing the petitioner on a request for extradition. How far even the state department could properly interfere in the case of a Cuban citizen so extradited would be a matter for that department and not for this court.

2. The original argument in this case was based principally upon the theory that the petitioner falsified public documents, that is, committed a forgery in proceedings by which it is al-

Re Martorell.

leged he produced fictitious heirs—widow and son of Manuel Fernando Fernández Vega, deceased. Additional arguments filed since that time lay stress upon the deed which it is alleged the petitioner had these parties make to him October 18, 1917, of all rights as such widow and heir to property, whether the property be situated in Cuba, Santo Domingo, or Porto Rico. The argument is that as the petitioner also signed this deed from the other parties, who were his tools, he also was guilty of forgery. It is not perceived, however, that the deed makes any material difference in the case, so far as extradition is concerned. It is quite true that a court is not bound to examine with very critical accuracy into the question whether the act committed is technically a forgery under the common law. As said in Benson v. McMahon, this is especially true when the wickedness of the act, the fraudulent intent with which it was committed, and the final success by which the fraud was perpetrated, are undoubted. Benson v. McMahon, 127 U. S. 457, 32 L. ed. 234, 8 Sup. Ct. Rep. 1240. Under the facts alleged there was undoubtedly forgery by the other parties, for they personated nonexisting people. The petitioner signed only his own name, and that cannot be forgery. If utterance of a forged instrument were the charge, there would be good reason for holding that there had been an utterance of a forged instrument; but this utterance could not exist until the false instrument was complete and was used for some purpose, and this apparently first happened in Porto Rico, and therefore would not be a subject for extradition to Cuba.

A deed under the civil law is not a paper inter partes, as under the common law. It is a proceeding before a quasi judicial magistrate, and in some respects its execution might be called

XII. Porto Rico.—6.

. Re Martorell.

a judicial proceeding. There could hardly be a forgery of such an instrument except on the part of the notary, which is not charged in this case. In Territory v. Gutiérrez, 13 N. M. 312, 5 L.R.A.(N.S.) 375, 84 Pac. 525, the notary making a false affidavit was held not to commit forgery. The case at bar is not that of a fictitious signature of another's name for the purpose of defrauding. This may have been done, but it was by the other parties and not by Martorell.

3. There is, however, a view of the case which must be considered. Martorell, whatever he did, did not forge any instrument himself; but under the proof he seems to have been the man behind the whole proceeding. The question arises whether his instruments can be punished and yet he himself escape? There is no doubt that the general tendency of law in modern times is towards simplification, and this is as true of criminal law as it is of civil law. A peculiarity of primitive law is its formality, varied in later times into technicality. For instance, there used to be a number of fine distinctions between principal and accessory, depending upon the nature of the part which the different persons took in a crime. The tendency in modern times has been towards abolishing the distinction and making every one a principal who does something which directly contributed to the result. Thus in the Porto Rican Penal Code we find in § 36 that "all persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed." [Compilation 1911, § 5442.] In Louisiana the law is the same. Under an indictment charging the defendant

Re Martorell.

with the act he may be convicted upon proof of procuring the act to be done by another in his presence. State v. Sturgeon, 127 La. 459–466, 53 So. 703. So that in the territory of one of the parties to the extraditing treaty, the petitioner could be considered as a principal, that is to say, that by procuring others to forge an instrument he became guilty of forgery himself.

4. It would not seem to be material in this case whether the offense were considered one against the Federal Statutes or against the law defined in the Porto Rican statutes. There is no jurisprudence or common law of the government of the United States. Indeed, criminal law is now largely statutory, although founded upon the common law, which has been developed in the different states upon the original English foundation. Unless it was so held, an extradition treaty would be manifestly inadequate to accomplish its purposes. The Supreme Court intimates that a violation of state criminal law would be within the terms of an extradition treaty and should be honored by foreign countries. Wright v. Henkel, 190 U. S. 40, 47 L. ed. 948, 23 Sup. Ct. Rep. 781, 12 Am. Crim. Rep. 386.

5. The same law seems to prevail in Cuba, the other contracting party. In District Attorney v. Bello, it was held that where the defendant procured a woman to personate another and signed a deed as such, he was guilty of the crime of falsification of a public document. 16 Jurisprudence of Supreme Court of Cuba, 91.

6. Reference has been made in the argument to the effect that the deed whose falsification is charged is still within the eye of the law an existing document, presumptively correct

because in the nature of a judicial finding of itself, and should be considered as valid. It would be impossible however to weigh the deed itself against a charge of forging the deed. If the criminal court had to wait until the civil court carried through a proceeding annulling a deed before it could arrest the man for the crime of forgery, it would generally not find the man within its jurisdiction after such civil proceedings. The respect for documents in Latin-America is great, but that the above is the rule is inconceivable and nowhere does such an idea appear in the extradition treaty. What merit there may be in it must be left to the trial court and cannot be considered ab extra by this court on application for habeas corpus.

7. There are several limitations upon the right of extradition as defined by the treaty. The question as to the evidence being usable in both countries has been considered in an opinion already filed. The conclusion of the court is moreover that the crime alleged is substantially one which is known in both countries. There remains, however, the question whether there is any bar under the Statute of Limitations. Article 7 of the treaty applies the limitation prevailing in the country where the extradition is sought. That for the purposes of this case may be considered as governed by the Penal Code of Porto Rico. This in §§ 77–8 declares that the falsification of documents has no limitation and that that of forgery has a limitation of three years. The distinction between the two has already been adverted to but is not material in this particular. The deed upon which much stress is laid is dated October 18, 1917, which is within three years preceding the date of this application. From the point of view of falsification of docu-

Re Martorell.

ments the point is not material. Either way limitation plays no part in this proceeding.

8. It is to be remembered that in habeas corpus this court is not acting within its general jurisdiction as a trial court, nor is it acting as an appellate court. It is, so to speak, looking at the case from the outside. Ornelas v. Ruiz, 161 U. S. 502, 40 L. ed. 787, 16 Sup. Ct. Rep. 689; Terlinden v. Ames, 184 U. S. 270, 46 L. ed. 534, 22 Sup. Ct. Rep. 484, 12 Am. Crim. Rep. 424. The statutes and treaties intrust the commitment of alleged criminals to United States commissioners, and one of these has acted in the case at bar. The only way that this court can interfere on habeas corpus is to see that the committing magistrate had jurisdiction. The facts and the law have already been passed upon by the commissioner, and the court should be slow to interfere unless satisfied that the commissioner had transgressed his power. The court is not at all convinced that he did. On the contrary, after a long and careful examination of the record and arguments in the case, the court is convinced that there is reasonable ground to believe that the petitioner committed the offense of which he is charged in the application of the Consul, and no reason appears for this court to interfere by habeas corpus or otherwise.

It follows therefore that the petitioner cannot be released upon habeas corpus and must be remanded to the marshal to carry out the extradition proceedings originated by the Cuban government. The papers introduced from the commissioner's files will be returned to him for whatever may be their proper use and destination.

It is so ordered.